IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**FITZROY WHITE,**
**A-078-513-888,**

    Petitioner,

vs.                                    Case No. 4:11cv212-MP/WCS

**ERIC H. HOLDER, JR., et al.,**

    Respondents.

_____/

## REPORT AND RECOMMENDATION

    Petitioner filed a *pro se* petition for writ of habeas corpus under § 2241 on May 11, 2011.  Doc. 1.  Petitioner alleged that he had been in held immigration detention for ten months at the time the petition was filed and claimed it was not significantly likely that Respondents would carry out his removal in the reasonably foreseeable future.  *Id.*, at 6-8.  Petitioner sought release from custody pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001).  *Id.*, at 8.

    Respondents filed an answer to the petition asserting that Petitioner's detention is lawful because it is a result of Petitioner's own actions in preventing his removal. Doc. 13.  Respondents point out that Petitioner failed to board an aircraft in November,

2010, which would have returned him to his native country of Jamaica.  Since that time, he has refused to cooperate with removal efforts.  Respondents assert that Petitioner's removal period has been suspended pursuant to federal law during the time in which Petitioner has failed to cooperate with efforts to remove him.  *Id.*, at 8.

Petitioner has submitted a reply, doc. 14, which was erroneously filed by the Clerk's Office because Petitioner did not sign the reply.  Nevertheless, the arguments in the reply have been considered, including Petitioner's admission that he refused to be removed, albeit on the grounds that Petitioner contends he has never used the name George Edwards.  Petitioner states that he has only used two names: Fitzroy White and O'Neil James.  *Id.*, at 2-3.  Petitioner contends he is willing to be removed under either of those two names, but not as a person named George Edwards.  *Id.*, at 4.

**Relevant Facts**

Petitioner is a native and citizen of Jamaica. Doc. 13, p. 1.  Petitioner first attempted to enter the United States on March 2, 2011, with a "photo-switched passport."  Doc. 13, p. 2; *see also* doc. 14, pp. 1-2.[1]  Petitioner acknowledges attempting to entered the United States on March 2, 2001, "with a photo switched passport" but contends it bore "the name Fitzroy White, date of birth January 1st, 1974."  Doc. 14, p. 1.  Petitioner asserted, "I know for a fact that George Edwards was never listed in the passport."  *Id.*, at 2.  Nevertheless, a copy of that passport was provided by

---

[1] Petitioner acknowledges attempting to entered the United States on March 2, 2001, "with a photo switched passport" but contends it bore "the name Fitzroy White, date of birth January 1st, 1974."  Doc. 14, p. 1.  Petitioner asserted, "I know for a fact that George Edwards was never listed in the passport."  *Id.*, at 2.  However, a copy of that passport was provided by Petitioner and by Respondents, and both copies show it is issued to George Edwards, and contains a printed signature for George Edwards.  *See* doc. 13-2, pp. 3-4; doc. 14-1, pp. 2-3.

Petitioner and by Respondents, and both copies show it is issued to George Edwards, and contains the printed signature for George Edwards.  *See* doc. 13-2, pp. 3-4; doc. 14-1, pp. 2-3.  Respondents assert that the passport bore the name George Edwards.

Petitioner was charged with "being inadmissible to the United States as an alien who sought to procure admission by fraud or willfully misrepresenting a material fact" and charged with "inadmissibility for failing to have a valid, unexpired entry document."  Doc. 13, p. 2.  On March 3, 2001, Petitioner was returned to Jamaica.  Doc. 14, p. 2.

Petitioner reentered the United States and on June 26, 2008, he "was arrested by the Massachusetts State Police with a duffle bag of marijuana located in the vehicle he was driving.[2]  Doc. 13, p. 2; doc. 14, p. 2.  On August 14, 2008, after release from the Plymouth House of Correction, Petitioner was detained by I.C.E..[3]  *Id.*

A travel document was obtained for Petitioner on February 13, 2009, and was valid for one trip to Jamaica on February 27, 2009.  Doc. 13, p. 2.  This initial travel document was issued in the name of George Edwards "based on the presentation of the passport that he provided upon his entry into the United States."  Doc. 13-1, p. 2.  On the scheduled removal date, Petitioner refused to cooperate and I.C.E. was unable to effect his removal.  Doc. 13-1, p 2.  A memorandum from the Immigration Agent attempting to carry out Petitioner's removal states that Petitioner told the officer he did not "want to be deported and that if we attempted to place him on the plane that he

---

[2] Petitioner was arrested under the name Fitzroy White, with a date of birth of January 1, 1974.  Doc. 14, p. 18.  Petitioner was charged with five counts, one of which included refusing to give his name and address or giving a false name or address.  *Id.*, at 19.

[3] The order of removal was final on July 7, 2008.  Doc. 14, pp. 20-24.

would cause problems on the flight."  Doc. 14-1, p. 10.  Petitioner said he had no clothes or money and "continually refused to change into civilian clothes or sign any paper work needed to complete the removal process."  *Id.*  The Officer "decided to terminate the escort detail due to [Petitioner's] failure to comply with his Order of Removal."  *Id.*

Petitioner does not dispute that he "refused to go on the transport van."  Doc. 14, p. 3.  Petitioner contends that he refused because I.C.E. was "trying to deport [him] the wrong way" by using the "incorrect" name of George Edwards.  *Id.*  Petitioner contends the only "two names [he] ever used before" were "Fitzroy White or O'Neil James."  *Id.*

Petitioner was served with a Notice of Failure to Comply on April 14, 2009.  Doc. 13-1, p. 2.  In July, 2009, Petitioner's custody was transferred to the United States Marshal's Service so Petitioner could "serve his sentence as a result of his June 26, 2008, substance control arrest."  *Id.*  Petitioner was in criminal custody until July 7, 2010, when he was returned to the custody of I.C.E.  *Id.*

On November 9, 2010, Petitioner was scheduled for the second time to be removed from the United States.[4]  Doc. 13-1, p. 2.  Once again, Petitioner refused to board the aircraft and became "physically combative at which point the captain of the aircraft refused to let him board."  *Id.*  Petitioner made claims during that altercation that he "would fight not to get on the plane and that ICE did not have proper documentation to remove him from the United States."  *Id.*

---

[4] Petitioner provided a copy of the travel document prepared for George Edwards, for travel on November 9th, going to Kingston Manley, Jamaica.  Doc. 14, p. 14.

Petitioner does not dispute this incident either.  Doc. 14, p. 5.  He acknowledges that he was transported to JFK International Airport with another alien.  *Id.*  Petitioner said he told the officers "right away" that he was "not going on the plane under the name George Edward."  *Id.*  Petitioner says that he wants "to go so bad" and is "ready to go" but he was "not using George Edward."  *Id.*

Petitioner also stated that a month earlier, in October, 2010, another effort was made to remove him.[5]  Doc. 14, p. 4. Petitioner said that when officials put him "in the ICE vehicle," Petitioner said "that name George Edwards is not my name."  *Id.*  Petitioner said that he "never used that name and the name [he] used to come to the United States [was] Fitzroy White, date of birth January 1st, 1974."  *Id.*  Petitioner asserts that he told "the ICE officer to use" the name Fitzroy White to remove him and said he "was ready to go if you use any one of [the] two names and not George Edward."  *Id.*, at 4.  On this occasion, the official from ICE attempted to check Petitioner in for departure but returned approximately thirty minutes later and said that he could not get "Clearance."  *Id.*, at 5.  The official told Petitioner "Jamaica will not take you and we cannot do anything about it or put you on the plane."  *Id.*  Petitioner again claimed there was "something wrong with this name and the document."  *Id.*  Attached to the reply is an Emergency Certificate, number 113050, for deportation to Kingston, Jamaica on October 14, 2010, from JFK, New York.  Doc. 14-1, pp. 16-17.  The certificate is

---

[5] Attached to the reply is a copy of a Corporate Security Transportation Report for Air Jamaica, dated October 20, 2010, and accepting George Edwards for "travel without escort."  Doc. 14, p. 13.  It provided a date of birth of January 1, 1974, and indicated there was a valid Jamaican passport and place of birth (POB) was Jamaica.  *Id.*

issued to George Edwards, a citizen of Jamaica, listing the date of birth as March 31, 1974. *Id.*, at 17.

Petitioner said that in November, 2010, his sister sent several documents by facsimile to the Jamaican consulate, including "birth certificates and police record with [his] fingerprint." Doc. 14, p. 6. Petitioner reports the "name on the documents [was] Christopher O'Neil James, date of birth September 2nd, 1970." *Id.*

At an unspecified time in early 2011, Petitioner met with Mr. Vance Carter from the Jamaican Consulate. *Id.*, at 6-7. Petitioner identified himself as "Christopher O'Neill[6] James" with a date of birth on September 2, 1970. *Id.*, at 7. Petitioner said he lived in Kingston, Jamaica. *Id.* Petitioner also claimed that an ICE official told Petitioner to tell Mr. Carter that his name was George Edward. Petitioner said that he asked the official, "Why are you forcing me to own a name that I have never used?" *Id.*

Respondents assert that during Petitioner's interview with Mr. Carter, he "failed to provide accurate information for verification of identity and claimed that the information on his removal documents [was] incorrect." Doc. 13-1, p. 2. Furthermore, Petitioner was interviewed a second time by Mr. Carter on April 4, 2011. *Id.*, at 3. On this occasion, Petitioner "now claims that his name is James O'Neill[7] and that he has no idea where any other alias came from." *Id.*

---

[6] Petitioner spells this name sometimes as O'Neill and other times as O'Neil.

[7] Presumably, at the first meeting with Vance Carter in February, 2011, Petitioner gave his name as Fitzroy White. That is the name Petitioner asserts he signed on March 3, 2011, when he was initially removed from the United States. *See* doc. 14-1, p. 6.

A copy of the Jamaican passport Petitioner used to first enter the United States has been provided by both parties. Doc. 14-1, pp. 3-4; doc. 13-1, pp. 3-4. It bears passport number 2346931 and is issued to George Edwards and lists the date of birth as March 31, 1974. Doc. 14-1, pp. 3-4. The parties also provided a copy of a United States of America Visa, also issued in the name of George Edwards, and listing a date of birth of March 31, 1974. Doc. 13-1, p. 5; doc. 14-1, p. 5. The visa was issued on July 27, 1999 and expired July 26, 2009, and was issued for Jamaican passport number 2346931, the same passport used to initially enter the United States. Doc. 14-1, p. 5. *Id.*

Petitioner provided a copy of a Notice of Alien Ordered Removed dated March 2, 2001, issued to Fitzroy White, A/K/A George Edwards. Doc. 14-1, p. 7. The verification of removal shows a departure date of March 3, 2001, from New York, and states that Petitioner "refused to sign." *Id.* The supporting Determination of Inadmissibility lists Petitioner as Fitzroy White, A/K/A George Edwards, with a date of birth of January 1, 1974. Doc. 14-1, p. 8. There is no signature for Petitioner in any document submitted as evidence and, instead, there are numerous references that he "refused to sign" the documents. Doc. 14-1, pp. 7, 9, 11, and 12.

Indeed, having reviewed the documents in this case and noting that Petitioner failure to provide a signature, the initial petition has been reviewed. Doc. 1. Petitioner typed his name, but provided no signature in that document either. *Id.*, at 10.[8] On one of the exhibits, Petitioner attempts to refute the notation on a Notice to Alien Ordered

---

[8] That mistake should have been observed earlier and Petitioner required to sign the petition prior to service. Because Petitioner paid the filing fee, there is no signature on an *in forma pauperis* motion either.

Case No. 4:11cv212-MP/WCS

Removed that he refused to sign.  Doc. 14-1, p. 6.  Underneath that notation, Petitioner wrote[9] that "Petitioner signed Fitzroy White right here."  *Id.* Therefore, Petitioner's argument in reply must be considered argument only and not evidence as it is unsworn and unsigned.

**ANALYSIS**

This Court has jurisdiction over this § 2241 habeas petition as Petitioner is not challenging a final order of removal, but only seeking release from what he asserts is an unlawful and indefinite period of detention pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).  In Zadvydas, the Supreme Court held that the continued detention of legal permanent aliens beyond the mandated 90-day[10] removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States."  *Id.*, at 689, 121 S. Ct. at 2498.  For the sake of uniform administration by the federal courts, the Zadvydas Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' "  Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005), *quoting* Zadvydas, 533 U.S. at 701,

---

[9] While I am not trained in hand-writing analysis, comparison of the G and R in Petitioner's writing appears to be the same hand-writing as is shown in the printed signature of George Edwards on the Jamaican passport.  *Id.*, at 3.  It is unusual to see a lowercase g used as the first initial, and the hand-writing in both documents also alternates with lower and upper case letters.  This appears to be the same hand-writing.

[10] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  8 U.S.C. § 1231(a)(1)(A).

121 S.Ct. at 2505.  The Court also concluded that if "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Zadvydas, 533 U.S. at 699, 121 S.Ct. at 2503.

In Clark v. Martinez, *supra*, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[11]  The Court concluded that there was no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for an admissible alien.  Clark, 543 U.S. at 386, 125 S.Ct. at 727.  Thus, it held that the 6-month presumptive detention period prescribed in Zadvydas should be applicable.  *Id.*  Accordingly, under Clark and Zadvydas, when an alien shows that he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted.  Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005) (relying on Clark to hold that "an inadmissible alien can no longer be detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future.").

Under 8 U.S.C. § 1231(a)(1)(A), the government has a 90-day period of time to remove an alien.  However, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents

---

[11] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6), *quoted in* Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).[12]  Thus, the statute expressly permits an alien to be detained longer than the presumptive removal period where the alien acts or conspires to prevent his removal.

In Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d 213 (D. Mass. 2000), a case decided before Zadvydas, the court denied habeas relief where the Petitioner was found to be "the cause for the long delay."  The court concluded that "an alien cannot trigger [a constitutional right to be free from indefinite detention by the INS] with his outright refusal to cooperate with INS officials."  Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d at 221.

In Powell v. Ashcroft, 194 F.Supp.2d 209 (E.D.N.Y. 2002), a case decided in the wake of Zadvydas v. Davis, the court noted that Zadvydas was concerned with the constitutionality of § 1231(a)(6) where aliens were in " ''deportation limbo because their countries of origin had refused to allow [them] entrance.' "  Powell, 194 F.Supp.2d at 211, *citing* Sango-Dema, 122 F.Supp.2d at 221 (explaining Zadvydas).  The court held that Zadvydas was inapplicable because it "did not discuss the constitutionality of Section 1231(a)(1)(C) and the tolling of the removal period during the time of an alien's non-cooperation."  Powell, 194 F.Supp.2d at 212, *citing* Guner v. Reno, 2001 WL 940576 (S.D.N.Y. Aug. 20, 2001).  The court held that petitioner's continued detention was appropriate because he had not "provide[d] accurate and complete information to the INS," and that after he did so, it was likely that he would be removed.  Powell, 194 F.Supp.2d at 212.  *See also* Archibald v. I.N.S., 2002 WL 1434391, *8 (E.D.Pa. July 1,

---

[12] An alien must be detained during the "removal period."  8 U.S.C. § 1231(a)(2).

2002) (finding the case factually distinguishable from *Zadvydas* where "Archibald's detention [was] a direct result of his seeking relief from deportation" and holding that because his indefinite detention was a result of his requesting a stay, he could not "be heard to complain[] that the time period during which he has been detained constitute[d] a denial of due process."); Thevarajah v. McElroy, 2002 WL 923914 (E.D.N.Y. Apr. 30, 2002)(holding that petitioner's nearly five years in the custody of INS was constitutional following *Zadvydas* because the continued detention was lengthened largely because of petitioner's own actions); *cf.* Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37 (D.D.C. July 22, 2002) (rejecting respondent's argument that petitioner "has not cooperated in obtaining travel documents because he told Liberian officials that he did not want to return to Liberia" and noting that INS had not argued that "petitioner refused to request travel documents or refused to be interviewed by Liberian officials" and did not deny "his Liberian citizenship, or gave false or misleading information that impeded the issuance of travel documents.").

In this case, Petitioner's six-month period of removal pursuant to Zadvydas has been tolled as permitted by 8 U.S.C. § 1231(a)(1)(C).  Petitioner has argued that he has only used two names - Fitzroy White and O'Neill James - yet that assertion is contradicted by Petitioner's own admission that when he first entered the United States on March 2, 2001, he did so with a "photo switched passport."  Doc. 14, p. 1.  Petitioner contends it was issued in the name of Fitzroy White, but that claim is not supported by the copy of the passport, nor does it make sense in light of his admission that it was photo switched.  A photo switched passport must necessarily show Petitioner's image,

but must list a different name.  If Petitioner contends that his name is Fitzroy White, then it is nonsense to assert that that was the name on the passport.

The undisputed evidence here is that Petitioner's passport is in the name of George Edwards, and that is the name listed on his Visa.  Having used that name to enter the United States unlawfully, Petitioner cannot be heard to complain about using that name to depart the United States.  Furthermore, Petitioner has argued that the date of birth listed for him is incorrect, doc. 14, p. 8, but similarly, Petitioner's argument is of no avail.  Petitioner's Visa lists his date of birth as March 31, 1974, doc. 14-1, p. 5, as does the passport.  *Id*., at 4.  The travel document issued for Petitioner bears that same date of birth.  Doc. 14-1, p. 15.  That Petitioner provided other birthdates at other times does not provide a basis to refuse to cooperate with immigration officials.  I note that Petitioner's criminal complaint in Massachusetts listed his date of birth as January 1, 1974, under the name Fitzroy White.  Doc. 14, p. 18.  Petitioner also acknowledges having used the name O'Neil James, and provided a date of birth for that name as September 2, 1970.  Doc. 14, p. 5.

Petitioner has disputed his true identity and date of birth, but there has never been a dispute that Petitioner is a native and citizen of Jamaica, that he was not lawfully admitted into the United States, and that Petitioner has been ordered removed back to Jamaica.  There is also no disputed that Petitioner is the cause of his extended detention.  Indeed, at no point has Petitioner sought to prove his real name.  Thus, Petitioner may not be heard to complain of delay in effecting his removal.  Petitioner has acted to toll the removal period and his continued detention is lawful pursuant to 8 U.S.C. § 1231(a)(1).

Petitioner has not met his burden under Zadvydas because he could have already been removed from the United States had he wilfully boarded the airplane. Jamaican officials have on more than one occasion provided travel documents for Petitioner and, it is reasonable to believe documents can again be provided to effect his removal.  Petitioner has failed to show that it is unlikely that he can be removed in the "reasonably foreseeable future."  Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505. Petitioner can be removed when Petitioner is willing to cooperate and this § 2241 petition should be denied.

Accordingly, it is **RECOMMENDED** that the petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 in the name of Fitzroy White, doc. 1, be **DENIED.**

**IN CHAMBERS** at Tallahassee, Florida, on August 29, 2011.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 4:11cv212-MP/WCS